John C. ANDERSON and Alice
L. Anderson, Plaintiffs and
Appellants,

v.

PRODUCTION CREDIT ASSOCIATION,
d/b/a Farm Credit Services,
Defendant and Appellee.

Nos. 17549, 17567.

Supreme Court of South Dakota.

Considered on Briefs Jan. 15, 1992.

Decided April 1, 1992.

Gwendolyn Laprath, Ft. Collins, for
plaintiffs and appellants Andersons.

Timothy M. Engel of May, Adam, Gerdes & Thompson, Pierre, for defendant and appellee.

AMUNDSON, Justice.

John and Alice Anderson (Andersons) appeal from trial court's grant of summary judgment in favor of Production Credit Association (PCA). Andersons' attorney, Gwendolyn Laprath (Laprath), appeals from trial court's grant of SDCL 15–6–11(b) sanctions against her in the amount of $6,085.56. We affirm.

## FACTS

On January 24, 1990, Andersons commenced an action against PCA alleging fraudulent conduct on the part of PCA. Andersons alleged in their complaint that PCA defrauded them of an undetermined amount of money during a period from approximately March, 1967 to October, 1970. The action was commenced by Laprath and served on PCA on February 20, 1990.

PCA timely responded to Andersons' complaint by filing and serving a motion to dismiss on the basis that the claim was barred by the statute of limitations. Laprath's office received the motion on March 22, 1990, which also contained notice of a hearing to be held the morning of March 28, 1990. Laprath was apparently out of the office and thus did not personally receive notice of the hearing until the afternoon of March 28. In the meantime, the trial court had held the hearing and granted PCA's motion to dismiss. An order granting the motion was signed March 30, 1990, and notice of entry of that order was served April 11, 1990.

Andersons thereafter filed objections to the order of dismissal, alleging that they did not receive timely notice of the hearing on the motion to dismiss. PCA renewed its motion to dismiss and Laprath then filed a notice of intent to take judgment by default on May 11, 1990, inartfully arguing that a motion to dismiss was not sufficient appearance in the matter to avoid the entry of a default judgment. Amidst the various motions and notices being filed in the case, counsel for PCA notified Laprath of its intention to pursue SDCL 15–6–11(b) (Rule 11) sanctions if Andersons persisted in prosecuting this untimely action. Laprath also made an untimely request for the trial judge to recuse himself from the case after he had granted PCA's original motion to dismiss, which request was appropriately rejected.

A hearing on PCA's renewed motion to dismiss was held on June 27, 1990. After considering the arguments of counsel, the trial court issued a memorandum opinion denying PCA's motion to dismiss. PCA then filed its answer to the original complaint on August 24, 1990.

PCA then proceeded to depose both John and Alice Anderson. Following the depositions, PCA filed a motion for summary judgment. In response, Andersons served, but never filed, an affidavit signed by their counsel and a motion seeking Andersons' costs and attorney fees in defending the motion for summary judgment.

The trial court held a hearing and entered an order granting PCA's motion for summary judgment, and awarded costs in the amount of $274.44. Subsequent to entry of summary judgment, PCA filed a motion for Rule 11 sanctions, or, in the alternative, for costs and attorney fees pursuant to SDCL 15–17–35. Laprath did not file any affidavit or pleading with the court reflecting her efforts in making a reasonable inquiry to formulate her belief that this cause of action was supported by facts and legal precedent in this state based on her research and investigation of this action.

After a hearing, trial court granted PCA's motion, but required PCA to file a detailed affidavit outlining its expenditures. An affidavit of costs was filed and served on April 19, 1991. Subsequently, PCA prepared and served findings of fact and conclusions of law in accordance with trial court's ruling on this issue. Laprath never served objections to the affidavit nor to the proposed findings of fact and conclusions of law. Laprath never submitted any proposed findings and conclusions stating her factual or legal position on this aspect

of the case. Trial court entered a judgment against Laprath for violation of SDCL 15–6–11(b) and ordered her to pay PCA's expenses in the amount of $6,085.56. This appeal followed.

## ISSUES

1. Whether trial court erred in granting summary judgment to PCA?
2. Whether trial court erred in granting Rule 11 sanctions against Laprath?

## ANALYSIS

### 1) *Summary Judgment*

The standard of review for a grant or denial of summary judgment is as follows:
' "In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper." '
*Waddell v. Dewey County Bank*, 471 N.W.2d 591, 593 (S.D.1991) (quoting *Garrett v. Bankwest, Inc.*, 459 N.W.2d 833, 836–837 (S.D.1990), and *Pickering v. Pickering*, 434 N.W.2d 758, 760–61 (S.D.1989)). With these considerations in mind, we address the merits of Andersons' appeal.

The trial court granted PCA's motion on the basis that Andersons' claim was barred by the statute of limitations. The statute of limitations for fraud and deceit is six years after the cause of action accrues. SDCL 15–2–13(6). Pursuant to SDCL 15–2–3, a cause of action for fraud "shall not be deemed to have accrued until the aggrieved party discovers, or has actual or constructive notice of, the facts constituting the fraud." Andersons argue that they did not actually discover the fraud until 1987, when they obtained copies of notes, ledgers, and other records from PCA.

The essential question which determines when the statute of limitations began to toll is when Andersons actually were aware of facts giving actual or constructive notice to suspect they were being defrauded. Andersons' complaint specifically says "[t]hat the Plaintiff [Andersons] had from 1969 to date maintained that the PCA/Farm Credit was demanding more money from them than they were owed[.]" Additionally, the deposition testimony of Andersons clearly and specifically shows they had knowledge of the facts surrounding their claim at the time of the alleged wrongful actions in 1970.* A party is not allowed to claim a version of the facts more favorable to himself than his own testimony. *Trammell v. Prairie States Ins. Co.*, 473 N.W.2d 460, 463 (S.D.1991); *Waddell*, 471 N.W.2d at 595 n. 3. Based on Andersons' admissions in their complaint and depositions, trial court concluded there was no genuine issue of material fact. This undisputed knowledge on the part of Andersons clearly foreclosed the filing of this action in 1990 under the statute of limitations, thus the trial court's conclusion that no genuine issue of material fact existed, is affirmed.

### 2) *Rule 11 Sanctions*

Laprath argues that sanctions against her were not appropriate because she was not a party to the action, and for trial court to award PCA all its costs and attorney

---

* John Anderson's deposition testimony is as follows:

Attorney Engel: And when you went in and finally paid off the debt to the PCA in 1970, you knew then that they were asking you for more money than you owed them?

Anderson: Yes. I had a suspicion.
Engel: But you couldn't prove it?
Anderson: No.
Engel: But you knew in your own mind they were charging you more than you owed them?
Anderson: Yes, sir.

fees was an abuse of discretion. SDCL 15–6–11(a) requires attorneys to sign all pleadings and papers they file, and such signature represents "that to the best of [attorney's] knowledge, information and belief formed after reasonable inquiry [the pleadings and papers are] well grounded in fact and [are] warranted by existing law, ... and not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." The trial court awarded PCA costs and attorney fees pursuant to SDCL 15–6–11(b), which provides:

If a pleading, motion or other paper is signed in violation of this rule [15–6–11(a)], *the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction,* which shall include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee. (Emphasis added.)

▋ Clearly, the statutes provide that the trial court may impose sanctions upon an attorney or any person who signed the pleading or other papers, even though that person is not a party to the action. Thus, we uphold trial court's decision to impose sanctions against Laprath, and turn to the appropriateness of those sanctions.

▋ Our review of appeals under SDCL 15–6–11(d) is conducted without any presumption of correctness for the trial court's findings of fact and conclusions of law. *Tri–State Refining v. Apaloosa Company,* 431 N.W.2d 311 (S.D.1988). SDCL 15–6–11(b) allows the trial court to impose "an appropriate sanction" and other courts have held that a trial court's determination of an appropriate Rule 11 sanction should not be overturned absent an abuse of discretion. *Cheek v. Doe,* 828 F.2d 395 (7th Cir.1987) *cert. denied,* 484 U.S. 955, 108 S.Ct. 349, 98 L.Ed.2d 374; *Zaldivar v. City of Los Angeles,* 780 F.2d 823 (9th Cir.1986); *Eastway Const. Corp. v. City of New York,* 762 F.2d 243 (2nd Cir.1985) *cert. denied,* 484 U.S. 918, 108 S.Ct. 269, 98

L.Ed.2d 226; *Davis v. Veslan Enterprises,* 765 F.2d 494 (5th Cir.1985).

It is an attorney's duty under SDCL 15–6–11(a) to conduct a "reasonable inquiry" into the facts and law prior to commencing any action. SDCL 15–6–11(a) clearly states that the attorney's signature represents that the signer has undertaken such an inquiry and believes the action is well grounded in law and fact.

In *Rodgers v. Lincoln Towing Service, Inc.,* 771 F.2d 194 (7th Cir.1985), the court, having granted sanctions against counsel, explained the purpose behind Rule 11 as follows:

Rule 11 was amended in August 1983 to increase its effectiveness in deterring abuses. [S.D. adopted Rule 11 in 1986.] Most importantly, the previous requirement that the attorney against whom sanctions were imposed must have acted in bad faith was eliminated. "The new language is intended to reduce the reluctance of courts to impose sanctions * * * by emphasizing the responsibilities of the attorney and reenforcing those obligations by the imposition of sanctions." Fed.R.Civ.P. 11 advisory committee note (citation omitted). The standard used is an objective "one of reasonableness under the circumstances," *id.,* rather than a subjective one.

*Rodgers,* 771 F.2d at 205. We do not question that Laprath had good faith intentions in filing this suit, however, mere good faith is not enough to withstand a motion for sanctions.

▋ The Ninth Circuit Court of Appeals stated: "Simply put, subjective good faith no longer provides the safe harbor it once did.... There is no room for a pure heart, empty head defense under Rule 11." *Zaldivar,* 780 F.2d at 829 (citations omitted). Thus, the standard under which Laprath's conduct is reviewed, is whether her actions were reasonable under the circumstances, not whether she acted in good faith. *Rodgers, supra.* Applying this objective standard, trial court found that attorney Laprath failed to establish what reasonable efforts she made to inquire into the law and facts of this case. Our review of

the record, under the same objective standard, reveals that Laprath failed to present any data or records reflecting what reasonable efforts she made to inquire into the worthiness of Andersons' claim. Further, Laprath failed to present any objections to the costs and fees claimed by PCA in this matter. Based on these deficiencies by counsel in the presentation of any objections, we cannot say the trial court abused its discretion and the award of sanctions is affirmed.

■ PCA further urges this court to award sanctions on appeal pursuant to SDCL 15–6–11(d) for the costs and expenses incurred in defending this appeal. Based on the undisputed facts and record in this appeal, we conclude that PCA should be awarded its costs and attorney fees in the amount of $2,128.96 pursuant to SDCL 15–6–11(d).

On notice of review, PCA urged this court to consider whether the trial court erred in denying PCA's motion to dismiss based on the statute of limitations. In light of our holding on the issues herein, we find consideration of this issue to be moot and, therefore, deem it unnecessary to reach a decision regarding trial court's denial of PCA's motion to dismiss. The judgment of the trial court is affirmed in all respects.

MILLER, C.J., and WUEST, J., concur.

HENDERSON, J., concurs in part and concurs in result in part.

SABERS, J., concurs in part and dissents in part.

HENDERSON, Justice (concurring in part; concurring in result in part).

There are three legal points to be advanced by this writer:

1. In *Glad v. Gunderson, Farrar, Aldrich and DeMerssman*, 378 N.W.2d 680 (S.D.1985), this Court upheld the grant of summary judgment based upon the statute of limitations when fraudulent concealment was alleged. Andersons, by their own testimony, possessed operative facts to cause the statute of limitations to run, i.e., knowledge for more than 20 years that they believed they had been overcharged. Therefore, we have recent precedent in this Court to apply. Furthermore, if the defendant here establishes the defense of the statute of limitations by demonstrating that the case was instituted beyond the statutory period, it behooves the plaintiffs to then go forward with proof to avoid the statute of limitations. *Kurylas, Inc. v. Bradsky*, 452 N.W.2d 111, 117 (S.D.1990) (quoting *Glad*, 378 N.W.2d at 682). Obviously, Andersons did not satisfy this requirement.

2. Issue three, fully briefed by both parties, is framed thusly: Did the trial court have jurisdiction to impose sanctions even though the summary judgment was previously granted in the underlying action? In my opinion, yes. Other courts have ruled on this issue concluding that Rule 11 sanctions survive the demise of the underlying lawsuit. *Wojan v. General Motors Corp.*, 851 F.2d 969 (7th Cir.1988); *Bryant v. Bloch Companies* [166 Ariz. 46], 800 P.2d 33 (Ariz. App.1990); *Darrah v. Des Moines General Hospital*, 436 N.W.2d 53 (Iowa 1989). A court is not out of business because it decides a case on a summary judgment motion; it has inherent power to finish its business once it makes a decision on the summary judgment. This would include a Rule 11 motion. For an interesting discussion on this point, *see, Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1077, 1078 (7th Cir. 1987).

3. Serious attorney mental deductions, slighting of legal responsibilities, and willful stubbornness were attendant here. It was not simply a mental approach of empty headedness. Nor was there, as I review this record, "a pure heart" reflected in the prosecution of this action. Therefore, I join the majority's opinion on the amount of the sanctions. *See*, approval of

$5,500.00 in sanctions ordered by the trial court, Justice Sabers' writing for this Court in *Tri–State Refining v. Apaloosa Co.*, 431 N.W.2d 311, 316 (S.D.1988). In this regard, however, I absolutely do not approve of the very strong and overreaching language of the *Zaldivar* opinion, quoted by the majority opinion, handed down by the Ninth Circuit Court of Appeals. Rather, if an attorney believed in his or her own mind, that he or she could advance a worthy, supportable theory in law to prosecute or defend an action (and had something to hang his/her hat on a theory which was not specious), I would be hard pressed to impose sanctions in any appreciable amount.* Willfulness is one thing—an empty head (with a little purity of thought) is quite another. Occasionally, a shallow stream will produce a decent dimpling. Decent enough in law to avoid sanctions. Here, warned repeatedly of the probable request for sanctions, this attorney was obstinate. In lieu of objectivity towards the law, disdain of the law existed. Therefore, the sanction, though seemingly heavy, does not constitute an abuse of discretion. Unquestionably, under this state's statute, judges are vested with a very broad discretion in granting sanctions. An "appropriate sanction" is wide-sweeping language. It is anything but a precise norm. Therefore, each decision in this Court on sanctions should pivot on the circumstances of each particular case. Thereby, justice is permitted to be handmade instead of mass produced.

SABERS, Justice (concurring in part and dissenting in part).

Summary judgment was properly granted because the statute of limitations ran years ago. As noted in the majority opinion, Andersons' action on fraud was barred as early as 1975 or 1976 because they had knowledge of facts which caused them to believe PCA was demanding excessive sums as early as 1969 and 1970. SDCL 15–2–13(6) and 15–2–3. This was a simple matter to prove by several different methods including: (1) request for admissions, (2) interrogatories or (3) deposition. This was a simple matter and $6,085.56 in sanctions was clearly excessive. For the Supreme Court to add sanctions of $2,128.96 for a total of $8,214.52 appears to be an abuse of our discretion. In my view, we should reduce sanctions to $4,000.00.

---

* Majority opinion, by adoption of federal decisions, totally negates South Dakota statute. SDCL 15–6–11(a) has an absolute implication of the necessity of good faith in prosecuting litigation. Hence, bad faith attends this statute. SDCL 15–6–11(b) refers to "appropriate *sanction*, which shall include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee." Notice the word "sanction"; whereas, SDCL 15–6–11(d) refers to "reasonable attorney's fees and costs," at the appellate court level. The "appropriate sanction" expression refers to "the court," which does include a *trial* court. Thus, a trial court or this appellate court had better zero in on the statute which it seeks to invoke. Confusion is eliminated thereby and a better record is established.